THE CONSOLIDATION COAL COMPANY *vs.* JOHN
SHANNON.

*Want of Certainty in Pleading—Common and Special
Counts—Election—Evidence of Trade-custom, how
admissible—Freight as damages—Demurrage, when
implied—Demand—Error of Court, when not ground
for Reversal.*

J. S contracted with the C. C. Company, to run two canal-boats, during
the navigable season, on the C. and O. canal, loading at Cumberland
and discharging at Georgetown, under the general regulations of the
Company, which were made part of the contract. The Company, by
these regulations, agreed to adjust, as far as possible, the number of
boats employed to its capacity for loading and for unloading and ship-
ment of the freight, reserving the right to cancel the agreement on one
trip's notice. J. S had also the right to cancel the agreement by giving
notice at the time of loading, to take effect after the performance of the
voyage. The freight charges, after certain deductions, were payable at
Cumberland, on the return of the boats, with the bills of lading endorsed
after delivery at Georgetown. The C. C. Company neglected to unload
these boats, within a reasonable time, after their arrival at Georgetown, ,
and J. S sued for freight and for demurrage under common counts, and
also under special counts, setting up the contract and alleging, that by
reason of the detention of the boats, he was unable to present the com-
pleted bills of lading at Cumberland; that he was put to great expense,
&c. The Company pleaded specially, that the wharf at Georgetown, at
which the boats were to be unloaded, had suddenly broken down, but
did not aver the duration of its incapacity arising therefrom. HELD:

1st. That the breaking down of the wharf was not such an event as would
exonerate the Company, unless it was shown to have been caused by the
fault of the plaintiff.

2d. That in any event the plea was wanting in certainty.

3d. That the plea was bad in not being an answer to the claim for freight,
which was a part of the special damage set forth.

4th. That the contract being silent as to the time of unloading, a reasona-
ble time was implied, and a claim for demurrage would lie for detention
beyond such time.

Consolidation Coal Company vs. Shannon.

5th. That evidence of the existence of a custom of the trade at Georgetown to unload boats within twenty-four hours, was admissible.

6th. That the plaintiff could only recover the freight as damages, on a special count, alleging performance on his part and refusal or prevention on the part of the Company.

7th. That the defendant could not move the Court to compel the plaintiff to elect whether he would rely upon the common counts or upon the special counts of his declaration. He might ask the Court to instruct the jury, that the plaintiff could not recover under certain counts, unsupported by legal and appropriate proof.

8th. That the plaintiff was under no obligation to make demand of the freight before bringing suit. The defendant's refusal to unload the boats, dispensed with the necessity of further demand.

9th. That if the breaches assigned in the special counts, embraced the claim for freight, a refusal by the Court below to instruct the jury, that the plaintiff was not entitled to recover his freight under the common counts, although erroneous, was no ground for reversal. To entitle a party to a reversal of a judgment against him, it must appear that there has been such error as may have operated to his prejudice.

10th. That the plaintiff was not bound to cancel the agreement even if he had been in condition to do so.

APPEAL from the Circuit Court for Allegany County.

The facts are sufficiently given in the opinion of the Court. At the trial below, the defendant, the Canal Company offered the following prayers, of which the Court (MOTTER, J.) rejected the second, sixth, seventh, eighth, ninth and tenth, and granted the first, third, fourth and fifth:

1. That if the jury shall find that the paper offered in evidence, bearing date on the 13th day of April, 1865, was executed by the plaintiff, and the other paper offered as the general regulations, contained the general regulations therein referred to, and that the plaintiff and defendant agreed upon said papers as the contract between them, and that the "Delano" was run under said contract in August and September, 1865, and the "Creole" was run under a similar contract, agreed upon between the parties verbally, in July, 1865, and

that the delays in unloading said boats at Georgetown by the defendant, occurred while said boats were running under said contracts, the plaintiff cannot recover in this action under the fourth and fifth counts of his declaration, for such delays.

2. That if the jury shall find that the plaintiff and defendant agreed with each other, on the 13th of April, 1865, that the paper dated the 13th of April, 1865, professing to be signed by the plaintiff, and the other paper offered in evidence as the general regulations, should constitute a contract between them; and if they find that in July, 1865, it was agreed between them that the plaintiff should take the canal boat or scow "Creole" upon a similar contract, and that the plaintiff arrived at the wharf of the defendant in Georgetown on the 26th of August, 1865, with said boats, loaded with coal for the defendant, under said contracts, and that there were no other boats loaded with the coal of the defendant in Georgetown; and that all the boats carrying coal for the defendant from Cumberland to Georgetown, which had arrived before the boats of the plaintiff arrived, had been unloaded, and that the defendant did not unload said boats before the 8th of September, 1865; and that the defendant had the capacity to unload said boats when they arrived, and at all times between their arrival and unloading on the 8th of September, 1865, that then said neglect or failure to unload said boats did not arise from a failure on the part of the defendant to adjust, as far as possible, the number of boats it had running on the canal to its capacity of loading, unloading and shipment from Georgetown; and the plaintiff cannot recover under the 6th and 7th counts of his declaration any damages for any delay in unloading said boats from the 26th of August to the 8th of September, 1865.

3. The same as the second, except that under a like hypothesis, it affirmed that the plaintiff could not recover under the *third* count of his declaration.

4. That if the jury shall find that the plaintiff and defendant agreed for the running of the canal boats "Delano" and

"Creole," as stated in the second prayer of the defendant, and that said boats were run under said contracts, and that the delay in the unloading of the said boats at Georgetown, from the 28th of August to the 8th of September, 1865, occurred, the plaintiff cannot recover for such delays on the 3d count of his declaration.

5. That if the jury find from the evidence in the cause, that the plaintiff ran his boat "Delano," mentioned in the proceedings in this cause for the defendant, under the written agreement, dated the 13th of April, 1865, and the general regulations now in evidence, and the "Creole" under a similar contract made verbally; and if they also find that the conversation stated by the plaintiff with Thomas Sheridan took place, and that Sheridan in said conversation told the plaintiff to go down with his boats, and that he should be unloaded at Ray's wharf, or some other wharf, and that said Sheridan said in said conversation that the plaintiff ought to be allowed for any delay that might arise, if the boats should not be unloaded promptly, but that he must arrange that with the agent below, or words to that effect, then the plaintiff cannot recover on the pleadings and evidence in this cause, for any such delay, on the declaration so made by said Sheridan.

6. That if the jury shall find that the plaintiff and defendant agreed for the running of the canal boats "Delano" and "Creole," as stated in the second prayer of the defendant, and that the plaintiff, in the fall of 1865, ran the said boats from Cumberland to Georgetown for the defendant under said agreement, loaded with coal of the defendant, and that the defendant would not unload said boats, and if the plaintiff abandoned said boats and delivered his manifests or bills of lading thereof to the company's agent at Georgetown, and that the plaintiff never demanded the delivery of said bills of lading from the company's agent, or requested payment of any balance that might be due upon said bills of lading, of the defendant at Cumberland, but brought suit without making any such re-

quest, the plaintiff cannot recover any balance that may be due on said bills of lading, though he may have supposed that such bills of lading would not have been delivered if requested, or that such money would not have been paid to him if it had been demanded.

7. That if the jury shall find that the plaintiff and defendant agreed for the running of the canal boats "Delano" and "Creole," as stated in the second prayer of the defendant, and that the plaintiff, in the fall of 1865, ran the said boats from Cumberland to Georgetown for the defendant, under said agreement, loaded with coal of the defendant, and that the defendant would not unload said boats, and if the plaintiff abandoned said boats, and delivered his manifests or bills of lading thereof to the company's agent at Georgetown, and that the plaintiff never demanded or requested payment of any balance that might be due thereon of the defendant at Cumberland, but brought suit without making any such request, the plaintiff cannot recover any balance that may be due on said bills of lading, though he may have supposed that such money would not have been paid to him if it had been demanded.

8. That if the jury find that the plaintiff and defendant agreed for the running of the canal boats "Delano" and "Creole," as stated in the second prayer of the defendant, and that the plaintiff, in the fall of 1865, ran said boats under said agreement, loaded with the coal of the defendant, and that said defendant did not unload said boats in a reasonable time, and prevented the plaintiff from returning said boats to Cumberland, and making presentation of his completed bills of lading for said loads of coal, the said plaintiff cannot recover for any balance that may be due on said bills of lading, on the breaches assigned in the sixth and seventh counts of the declaration, because the said breaches do not allege that the defendant refused or did not unload said boats in violation of any stipulation of the contract of the defendant set out in said counts.

9. That if the jury find that the plaintiff and defendant agreed for the running of the canal boats "Delano" and "Creole," as stated in the second prayer of the defendant, and that the plaintiff, in the fall of 1865, ran said boats under said agreement, loaded with coal of the defendant, from Cumberland to Georgetown, and that said defendant did not unload said boats in a reasonable time, and prevented the plaintiff from returning said boats to Cumberlane, and making presentation of his completed bills of lading for said loads of coal, the plaintiff cannot recover for any balance that may be due on said bills of lading on the second count in the declaration.

. 10. That if the jury shall find that the plaintiff and defendant agreed with each other, as stated in the second prayer of the defendant, in relation to the running of said boats, and that the plaintiff arrived at the wharf of defendant at Georgetown, on the 26th of August, 1865, with said boats loaded with coal for defendant by the plaintiff under said contract, and that the defendant did not unload said boats until 8th of September, 1865, and that the defendant had capacity when said boats arrived, and continuously up to said 8th of September, to unload the said boats, did not, the said plaintiff cannot recover in this action for such delay, but that the said general regulations provided a remedy for him by cancelling said contract, if the boatmen were unreasonably delayed without any fault on his part.

To the ruling of the Court in rejecting its second, sixth, seventh, eighth, ninth and tenth prayers, the defendant excepted, and the verdict and judgment being against it, the present appeal was taken.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*J. H. Gordon* and *George A. Pearre,* for the appellant.

*Thomas J. McKaig,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This was an action instituted by the appellee against the appellant, to recover for the detention of canal boats at Georgetown, and for freight. The declaration contains seven counts. The first is for money due on account stated; the second, for work done and materials furnished; the third, for demurrage of canal boats; and the fourth, fifth, sixth and seventh, are on the special contract between the parties. The pleas are, first, never indebted as alleged; second, never promised as alleged; and third, as to the fourth, fifth, sixth and seventh special counts, a special plea, setting up various matters as a bar to the appellee's right to recover on those counts. A bill of particulars was called for by the appellant, and filed by the appellee, whereby it appears that the claim of the latter consisted of two items; the first for what is called demurrage of two canal boats at Georgetown, D. C., from the 26th of August, 1865, to the 8th of September, 1865, at $15 per day; and the second, for balance of freight due, $94. The appellee joined issue on the first and second pleas of the appellant, and demurred to the third, being the special plea. And the demurrer being sustained by the Court below, the first question that arises on this appeal is as to the sufficiency of this special plea.

The contract, as we gather it from the very prolix and inartificially drawn pleadings in the cause, was, that the appellant rented or hired to the appellee two canal boats, "F. H. Delano," and "Creole," to be run in the navigable season of the year 1865, on the Chesapeake and Ohio Canal, from Cumberland to Georgetown, in carrying coal for the appellant; the appellee to make the usual time, casualties and unavoidable detentions excepted, and to comply with all the general regulations of the appellant, and to allow a deduction out of the freight earned on each cargo, of $60, as rental of each boat. These were the stipulations on the part of the appellee. The regulations of the appellant, which were incorporated into the contract, so far as they related to the

unloading of the boats at Georgetown, were that the appellant would, as far as possible, adjust the number of boats employed, to its capacity for loading, unloading and shipment of the coal from Georgetown; and as this capacity might vary at different times in the season, it reserved to itself the right at all times, by giving one trip's notice, of cancelling one or more agreements for renting boats, so as to avoid unnecessary delay to the boats at either end of navigation. And if the loading or unloading of any boat should, from any cause not within the control of the boatmen, be delayed unreasonably and injuriously, and the captain from any cause should be unable to avail himself of the privilege of loading outside, he should be at liberty to cancel the agreement, by giving notice on one loading, *that after performing that voyage,* he would do so, by returning the boat to the appellant at Cumberland, in the order agreed on. The usual rates of freight to be allowed, from which, after deducting therefrom the agreed price of hire or rent of boat, and for charges and repairs, were payable in Cumberland, on return of the boat, and the presentation of the completed bills of lading.

The appellee alleged performance of the contract on his part, and that by reason of the neglect and refusal of the appellant to unload and discharge his boats at Georgetown, within a reasonable time after their arrival there with their cargoes, he sustained damage, and that he was thereby prevented from returning the boats, with the completed bills of lading, on which he was entitled to receive, at Cumberland, the freight earned.

We think it clear that the appellant's third plea offered no sufficient bar to the appellee's right to recover on the special counts of his declaration. It sets up the contract as declared on, and seeks to avoid the effect of the appellant's failure to unload and discharge the boats, within a reasonable time, by reason of the fact that its wharf at Georgetown, suddenly broke down, at which the boats of the appellee were required

to be unloaded, and because of the want of shipping capacity of the appellant for its coal at that point; and that its failure to unload was not owing to its neglect to adjust the number of boats to its capacity to unload within a reasonable time. But it is clear this forms no ground of exoneration from liability to pay for the detention of the boats beyond a reasonable time. The appellant had control of the loading as well as the unloading; and having loaded the boats at Cumberland, it was bound to unload and discharge them at Georgetown, within a reasonable time after their arrival, unless, by some event or condition of things, contemplated by the contract, it was excused from so doing. The sudden breaking down of the wharf was not such an event as would excuse or exonerate the appellant, even if it had occurred without its fault, unless it were shewn to have been caused by the fault of the appellee. That it occurred by any fault of his is not pretended. The wharf may have been overloaded, or have been insufficiently constructed, or been rotten, and if it broke from any such causes, the consequence should clearly not be allowed to fall on those who had no control over it. Nor does the plea allege the duration of the appellant's incapacity to receive the coal at this particular wharf. It alleges that when the boats arrived the wharf was broken, but it does not aver that it remained so, and that the appellant was, during the whole period of the detention of the boats, without capacity to receive and tranship the coal. The plea is therefore wanting in certainty, even if the breaking down of the wharf could excuse the delay in unloading the boats.

The contract declared on, so far as the appellee, as special owner of the boats, undertook for freight to employ them exclusively in the service of the appellant, is analagous, in many respects, to that of a charter-party; and if, by charter-party, the freighter expressly stipulates for the payment of demurrage for any delay beyond a reasonable time for unloading the vessel, he is bound, even though the delay may not be caused by his fault, provided it is not caused by the

fault of the owner or his agents. When the vessel is placed in the proper position to be unloaded, mere unforeseen impediments to the unloading, such as the crowded state of the docks, the want of information of the vessel's arrival, or the non-receipt of the bill of lading, will not excuse payment for the detention. *Abbot on Ship.*, Pt. 3, ch. 1 ; *Barker vs. Hodgson*, 3 *M. & Sel.*, 267 ; *Barret vs. Dutton*, 4 *Camp.*, 333 ; *Hill vs. Idle*, *ib.*, 326. And so, in a case where the charter-party was silent as to the time of loading, as the contract here is as to the time of unloading, reasonable time, under ordinary circumstances, was implied, and a strike in the collieries, whence the freighter was to get his cargo, was held to be no excuse for delay. *Adams vs. Royal Mail Co.*, 5 *C. B.*, N. S., 492 ; 28 *L. J. C. P.*, 33. And although the claim of the appellee is not founded upon any express stipulation in the contract for demurrage as such, still it is of the nature of demurrage, to be recovered as damages for the unjustifiable detention of the boats, after they were taken to the place of discharge; for it was equally the duty of the appellant to unload and discharge the boats, within a reasonable time, under the present contract, as if there had been an express provision to that effect, and demurrage had been agreed to be paid for detention beyond such time. Otherwise, such contracts as the present would be productive of the greatest hardship and injustice to the hirer of the boat. He is required to keep it in repair, to man and equip it, to make the trips in the usual time, and is liable at any time, upon short notice, to be discharged from the further use of the boat, without any provision as to the disposition of the equipments. To say that the hirer of the boat is to bear all the loss and expense of undue detention of it by the shipper, although the former has performed his part of the contract of affreightment, is to say that the contract is without mutuality.

But this third plea of the appellant is defective in another respect. A plea in bar must be a substantial and conclusive answer to the plaintiff's right to recover on the particular

counts to which it is pleaded. *Karthaus vs. Owings,* 2 *Gill & John.,* 431. This plea offers no answer whatever to the demand for freight, the non-payment of which is assigned in the special counts as a breach of the contract. The appellant, by its regulations, agreed to allow the current rate of freights, payable in Cumberland, on the return of the boats, and the presentation of the completed bills of lading. If the appellee did all that was incumbent on him to do, in order to effect a delivery of the cargo, and its actual delivery, and discharge of the boats, were prevented by the neglect or omission of the appellant, and hence the boats could not be returned, nor the completed bills of lading presented, as required by the regulations, the appellee is clearly entitled to the freight, as much so as if he had complied with the conditions prescribed. In such case, however, (and especially where the special contract is still open and subsisting,) it must be recovered in the shape of damages, under a special count, wherein must be alleged the appellee's performance and readiness to perform, and the appellants' refusal or prevention. *Bradstreet vs. Baldwin,* 11 *Mass.,* 229; 2 *Saund. Plead. & Evid.,* 80; *Notes to Cutter vs. Powell,* 2 *Smith's Lead. Cases,* 27, 40, 41, (*4th Am. ed.;*) *Alexander vs. Hoffman,* 5 *W. & Sergt.,* 382; *Phelps vs. Sheldon,* 13 *Pick.,* 50; *Pitkin vs. Frink,* 8 *Met.,* 12; *Moulton vs. Trask,* 9 *Met.,* 577. For these reasons, we think, the plea insufficient, and that the Court below was right in sustaining the demurrer to it.

The next question that arises is on the appellant's first bill of exceptions. This exception was taken to the Court's refusal to exclude certain declarations of Sheridan, the appellant's superintendent of shipment at Cumberland, made to the appellee, in regard to allowance for delay of his boats at Georgetown. It is difficult to perceive the materiality of these declarations, and, perhaps, they should have been excluded. But the appellant has no cause to complain, for by its fifth prayer, which was granted, the jury were instructed that these declarations of Sheridan constituted no ground of

recovery on the pleadings and evidence in the cause. The declarations excepted to, although allowed to go to the jury, were not allowed to have any effect as evidence; and consequently the appellant has not been injured.

The appellant's second bill of exception was taken to the Court's refusal to exclude, or rather strike out, certain evidence, tending to prove the existence of a custom or usage at the appellant's wharf in Georgetown, as to the time within which boats were unloaded and discharged. The witness stated that the custom of the trade at Georgetown was, that the boats were to be unloaded in twenty-four hours after reporting at the office of the appellant, or to the superintendent of the wharf. This evidence, we think, was properly admissible, not to add a term to the contract, nor to aid in its interpretation, but for the purpose of showing what was regarded, in the regular course of the trade, as the reasonable time within which boats should be unloaded. The regulations incorporated into the contract, fixed no definite time within which boats would be unloaded and discharged; but if by usage, established in the trade at appellant's wharf, twenty-four hours were taken as reasonable time, the fact of such usage was certainly admissible as tending to show what the appellant, or its agents, regarded as reasonable time, and its own practice upon the subject. See the case of *Leidemann vs. Schultz*, 14 *C. B.*, 38.

After all the evidence had been produced on both sides, the appellant moved the Court that the appellee should be compelled to elect whether he would rely upon the second and third common counts of his declaration, or upon the fourth, fifth, sixth and seventh counts, being those upon the special contract. This motion the Court refused, and to its refusal the third exception was taken.

It is certainly very true, a plaintiff cannot claim to recover in respect to the same cause of action, upon two or more inconsistent counts in his declaration; but where he declares upon a special contract, and joins therewith the common

counts, he may abandon his special count, even after he has attempted to prove it and failed, and resort to the common counts; but in such case, of course, the proof must be of a character to entitle the plaintiff to recover on the common counts, irrespective of the special contract counted on.     If there be a special contract, which remains open and unrescinded, and the plaintiff can only recover upon that, if at all, the common counts can perform no legitimate office; and, if the plaintiff, in such case, abandons his special count, he surrenders his right to recover altogether.     In this case there is nothing shewn in the proof to entitle the appellee to recover on the common counts in his declaration; for, although the bill of particulars describes the appellee's claim as being for demurrage and freight due, neither of those items could be recovered in this action as we have seen, except under the special counts as damages. *Horn vs. Bensasan*, 9 *C. & P.*, 709. The appellant, however, had no right, in the mode adopted, to require the appellee to abandon or elect between any of the counts of his declaration.     The proper mode was that subsequently adopted, of asking instructions from the Court that the appellee was not entitled to recover on those counts not supported by legal and appropriate proof.     By the third and fourth prayers of the appellant, which were granted, the jury were instructed that the appellee could not recover on the third count, which was for demurrage, for the delay in unloading the boats.     These instructions were clearly correct, and by them the same object was accomplished, as to the third count, as if the appellee had been required to abandon it.

The appellant's fourth exception was taken to the Court's refusal to grant certain prayers that were offered by it.     The first prayer rejected, in a series of ten offered, was the second, whereby the Court was asked to instruct the jury, that because the appellant had capacity to unload the appellee's boats, and its failure to do so was owing to other neglect than to the nonadjustment of the number of boats to its capacity to unload, under the sixth regulation, therefore, the appellee could not

recover under the sixth and seventh counts of his declaration, damages for the delay and detention of his boats.

This prayer would seem to be based on a misapprehension of the extent of the breaches assigned in the two special counts referred to. It is true, that in one part of them, (the two counts being exactly similar, but having reference to different boats,) it is alleged that, because the appellant did not adjust the number of boats in its service to its capacity to load and unload without delay, it; therefore, had not capacity to unload the boats of the appellee; but, in a further distinct breach assigned, it is alleged that, upon arrival and reporting the boats to the appellant at Georgetown, and requesting that they should be unloaded within a reasonable time, the latter did not, nor would, receive or unload the boats within a reasonable time, but wholly refused and failed to unload the same, and hindered and prevented the appellee from making the number of trips that he would have otherwise made, and also hindered and prevented the appellee from returning the boats to Cumberland, and making presentation of the completed bills of lading, and the appellant's failure to pay freight thereon. In view of this comprehensive breach, assigned in the counts to which the prayer refers, the Court could not have done otherwise than refused the prayer. It was, to say the least of it, a refinement that did not at all tend to subserve substantial justice.

The sixth and seventh prayers, the next rejected, both present the same question; and we are very clear in the opinion that the Court below was right in refusing to grant them. The appellee was under no obligation, under the circumstances of the case, to make demand of the freight before bringing his suit. The appellant's refusal to unload the boats, and thereby preventing the appellee from getting his bills of lading endorsed with certificates of delivery of the cargoes, dispensed with the necessity of further demand.

Nor was there any error in refusing to ,grant the appellant's eighth prayer. ' The breaches assigned in the sixth and seventh counts of the declaration, in express terms, aver that the appellant, by refusing to unload the boats, hindered and prevented the appellee from returning them to Cumberland, and from making presentation of the completed bills of lading to the appellant at that place, to entitle him to demand his freight. Until the cargoes were actually delivered, and the bills of lading endorsed with the quantities of each cargo, the appellee was not in a condition, under the contract, to make demand for the payment of freight *as such*. Whether the breaches aver in terms that the refusal or neglect to unload the boats, was in violation of the contract, as this prayer seems to require, is wholly immaterial. Facts only are to be stated in the pleading, and the Court, not the pleader, is required to draw the legal conclusion from them.

As to the ninth prayer, which was also refused, we think the Court erred in not granting it; but we do not perceive how the appellant could have been injured by its refusal. For, although the appellee was not entitled to recover, under the facts of the case, his claim for freight, under the common count for work and labor, the breaches assigned in the special counts, embrace the claim for freight, and the truth of the hypotheses of several of the appellant's prayers, would concede the appellee's right to it. If it was found due in fact, and formed part of the general verdict that was rendered, there being good and appropriate counts in the declaration to sustain such finding, the appellant is without a shadow of pretence for maintaining that it has been, in any way, prejudiced by the refusal of the Court to grant this ninth prayer. To entitle a party to a reversal of a judgment against him, it must be shewn that there has been such error as may have operated to his prejudice. Here we fail to perceive that any prejudice could have occurred. The error in refusing this prayer will not, therefore, be ground for reversal.

The tenth prayer, which was refused, is based upon the theory that the appellee had the option to cancel the contract, because of the appellant's failure to unload the boats, and that that was the only remedy open to him. With that theory, however, we do not agree. The appellee was not bound to cancel the contract, even if he had been in a condition to do so. But the condition of things contemplated by the contract, did not exist, under which the appellee could have given the notice, in order to the surrender of the boats, and at the same time preserved his own rights. This prayer was properly refused.

There being no error disclosed in the rulings of the Court below sufficient to justify a reversal of its judgment, that judgment must be affirmed.

*Judgment affirmed.*