James R. Willing and Affra D. Mezick *vs.*
Thomas Bozman.

*Repeal of the Act of* 1872, *ch.* 241, *by the Act of* 1874, *ch*
181—*Insufficient Pleas—Demurrer sustained—Plea in bar—*
*Conclusion of Plea—Bad plea—Count bad as charging a*
*separate trespass—General demurrer to Pleas—Defective*
*count in Declaration.*

The provisions of the general Act of 1874, ch. 181, relating to oysters,
being inconsistent with, and repugnant to, the provisions of the
special Act of 1872, ch. 241, entitled "An Act to protect oysters
within the waters of Wicomico county," the two Acts cannot stand
together, and the former must be construed as repealing the latter.

The first count of a declaration charged that W. and M. the defend-
ants, had unlawfully, wickedly and maliciously seized and taken
possession of the plaintiff's boat whereby he was greatly damaged
and injured. To this count the defendants pleaded the general
issue, and filed separate pleas by way of justification to the whole
declaration. The separate plea of the defendant W. alleged that
the boat mentioned in the declaration was being used for the pur-
pose of dredging oysters in the waters of Wicomico county, and
that on being pursued the person in charge of said boat escaped,
and the boat itself was taken by the defendant as deputy com-
mander of the State Fishery Force, and delivered to the defendant
M. a Justice of the Peace of said county to be disposed of accord-
ing to law. The separate plea of the defendant M. alleged that
the boat was delivered to him as a Justice of the Peace of Wicomico
county by the defendant W. acting as deputy commander of the
State Fishery Force, charged with violating the provisions of the
Act of 1872, ch. 241; and that as Justice of the Peace he held the
same upon said charge, to await the adjudication of the questions of
law arising in connection with the condemnation of said boat. To
these pleas the plaintiff demurred. HELD:

1st. That under the facts set forth in these pleas, the defendants were
not justified in taking the plaintiff's boat, the Act of 1872, ch. 241,
under which the seizure was made, having been repealed by the
Act of 1874, ch. 181, and the demurrer should be sustained.

Willing and Mezick *vs.* Bozman.

2nd. That the plea of the defendant M. being a plea in bar, was bad, not being an answer to the whole declaration.

3rd. That the plea to have been good and sufficient, ought to have concluded by denying that the defendant " unlawfully, wickedly and maliciously " took the plaintiff's boat.

If a plea undertake to answer the whole declaration, but in fact answers a part only, the plea is bad, and the plaintiff may demur.

A count charging one of two persons with trespass, without designating which of the defendants committed the trespass, is, as a count charging a separate trespass, bad.

Where a general demurrer to pleas is sustained, the defendants are not entitled to judgment because one of the counts of the declaration is defective, the other counts being good, and sufficient to support the action.

APPEAL from the Circuit Court for Worcester County.

This suit, the nature of which is set forth in the opinion of the Court, was brought to the September Term, 1877, of Wicomico County, by the appellee against the appellants. The plaintiff on the 26th of November, 1877, declared with three counts in his *narr.*, and on the 9th of January, 1878, the defendants pleaded the general issue and three special pleas. On the same day, on suggestion of the plaintiff, the Court directed the case to be removed to Worcester County. On the 22nd of May, 1878, the plaintiff joined issue on the defendants' first plea and demurred to their second and third pleas. No reply was made to the fourth plea. On the same day, the plaintiff obtained leave to withdraw and amend his *narr.*, as to the first count, and filed his amended *narr.* Thereupon the defendants jointly filed amended pleas, one, two and three. The first plea presented the general issue ; the other pleas were special. The plaintiff then withdrew and refiled the afore-mentioned replication and demurrer. On the 23rd of May, 1878, the defendants severally obtained leave to file an additional plea, which was accordingly done. " Thereupon demurrer was entered short upon the docket

by consent." Whereupon the Court decided, "it appears to the Court here that the said pleas of the said defendants, and each of them above pleaded, and the matters therein contained, are not sufficient in law to preclude the said plaintiff," etc. On the same day a jury was sworn and verdict rendered for the plaintiff for $250. The plaintiff offered two prayers, the first of which was conceded, and the other defining the measure of damages was granted. The defendants offered one prayer which was granted. On the 28th of May, a motion for a new trial was made by the defendants, and on the 8th of June following was overruled, and judgment entered on the verdict. The defendants appealed.

The cause was argued before Bartol, C. J., Bowie, Miller, and Robinson, J., for the appellants, and submitted for the appellee.

*John H. Handy*, for the appellants.

Was the appellant, Willing, justified by law in seizing the boat or canoe under the circumstances detailed in the special pleas?

The solution of this question depends upon several propositions. Was the appellee violating the oyster law provided for the waters of Wicomico county? He was. The Act of 1872, ch. 241, sec. 1, provides—"That it shall not be lawful for any person or persons to employ any canoe, boat or vessel in catching or taking oysters with scoop, scrape, drag or dredge, or any similar instrument, within the waters of Wicomico county," &c. The appellee, at the time he was discovered by the appellant, was employing the boat, whose seizure is the *gravamen* of this suit, in violating this law, in catching oysters in those waters with the forbidden instruments. The boat, its tackle and apparel, and all things on board at the time of the violation, was forfeited by the *act of "violating"* the

above section, and, in addition, he was liable to be fined. Act of 1872, ch. 241, sec. 3.

Now the demurrers admit that Bozman was violating this law, and the third section of the act *proprio vigore*, forfeits the boat employed in so breaking the law.

The boat, etc., by the fourth and seventh sections, is required to be seized and delivered over to the authorities of the county.

Had Willing, acting as deputy commander of the police boat, "Carrie Franklin," the right to make seizure *super visum?*

He had no warrant from a justice, and, indeed, the Act of 1872, ch. 241, makes no provision for the issuing such a warrant to the commanders of the fishery force. See *secs. 4 and* 7.

No information on oath had been made to the commander of the Oyster Police Force or deputy commander Willing, but the latter acted upon his view of the offence committed. Was he justified in so doing?

When the Act of 1872, ch. 241, was passed, the Act of 1870, ch. 364, was the general Oyster Law of the State. *By that Act the Oyster Police Force was created.*

From the whole scope and tenor of this Act, it is clear that the Oyster Police Force was intended to act independently of the justices in making arrests and seizures; and whilst they are expressly authorized *and required* to make such arrests and seizures, *super visum,* they are no where required to execute any warrant issued to them, nor is any law found for issuing such warrant.

And because it is their special duty for which they are created and paid to make such arrests and seizures, section 17 provides that they shall receive no part of the proceeds of the forfeited property.

The commanding officer acts under the sanction of his official oath, and his subordinates, under rules and regutions made by him, with the concurrence of the Board of Commissioners of the State Oyster Force. *Secs.* 40 *and* 43.

No information on oath was necessary or provided for in any case to authorize the commander and his sub-commanders to act.

If there was evidence to satisfy them that the person had violated the law, they were empowered to arrest, and seize the boat, just the same as if they saw the act itself.

If however some persons not belonging to the Oyster Police Force reported to the commander that a violation had taken place some time before, the commander would have sent him to a justice to get out a warrant, on oath, under section 13, directed to the sheriff, constable, owner or master of a vessel, &c. Such was certainly the original conception of the duties, powers and functions of the Oyster Police Force.

This being the state of the law, the Act of 1872, ch. 241, was passed. Justices were not authorized to issue warrants to them; but section seven provides that information on oath may be lodged with the commander, and he being an executive officer, (unlike the justice who must issue his warrant to his executive officers,) is required to proceed, on such sworn information, to arrest and seize.

Prior to that Act and section, he was only bound to act *super visum*, either of the act itself or of such evidence as authorized him to infer it.

Did this Act abrogate any of the powers he already had as a policeman, specially created to enforce the Oyster law of the State? Was he not still bound to arrest and seize on the view?

The Act of 1872, ch. 241, clearly indicates that he was to guard the waters of Wicomico, and enforce the law; and that in addition to his *duties* under the Act of 1870, ch. 364, he could be compelled to listen to informations on oath and hunt up the offender and *pursue him and his boat beyond the waters of the county,* which the constable, sheriff and military officer, under the justice's warrant, could not do.

Willing and Mezick *vs.* Bozman.

The Act of 1872, does not repeal the Act of 1870, except so far as repugnant; they are in *pari materia*, and are to be read and construed as parts of the same article. It is a provision within the scope, powers, purposes and intention of the law creating the Oyster Police Force. It was passed with a full knowledge of the existing law, and from section seven manifestly with reference to its provisions.

It was then the intention of that Act that in addition to the powers given to the Police Force by the Act of 1870, it should be compelled to act on sworn information, in so far as Wicomico County was concerned.

Unless, then, some other and subsequent legislation has affected the question, it would seem the appellant Willing, had not only the right, but it was his duty to arrest the offender and seize the boat employed, *super visum.*

Now what change does the Act of 1874, ch. 181, make? Though it changes much of the law with regard to oysters, and the punishment for violating the Oyster Law, it does not seem materially to change the general powers of the Oyster Police Force. It takes away none of its duties or powers, but adds to the Force itself, and to its powers and duties.

The Act of 1874, chap. 181, does not, in terms, repeal the Act of 1872, ch. 241. On the other hand, it expressly states in the title and repealing clause what it does repeal, viz., the Acts of 1870, ch. 364, and 1872, ch. 167. The Acts of 1872 were not overlooked. *One* of them was repealed.

If, then, the Act of 1872, ch. 241, is repealed by the Act of 1874, it is by *implication.* To work such a repeal the repugnancy must be so great that the two Acts cannot stand together. *Mayor, &c., of Cumberland, et al. vs. Magruder, et al.,* 34 *Md.,* 381; *State vs. Northern Central Railway Co.,* 44 *Md.,* 131.

Willing and Mezick *vs.* Bozman.

It will not be held that a prior law is repealed by a subsequent one, containing no express words to that effect, unless the implication should leave no reasonable doubt that such was the intention of the Legislature. The necessary implication to repeal an Act must be as certain as an express repeal. 13 *U. S. Digest,* 595, *Plac.,* 34, cites *The United States vs. Twenty-five Cases of Cloths, Crabbe,* 356.

On the other hand, all Acts in *pari materia* are to be taken together as if one law. *McCartee vs. Orphans' Asylum Society,* 9 *Cowan,* 506–507.

There is no such repugnancy or inconsistency between the two Acts, as the appellee supposes. It is not impossible for them both to stand. *It is purely a territoral question.* The inconsistency between the Acts of 1870 and 1872 was as great as that between the Acts of 1872 and 1874.

The Act of 1874 must be read as subject to any local law on the subject, found on the statute books; and so read, the two form parts of one system, and may easily stand together, and be enforced by the same police.

It is true that the Act of 1874 was intended as a revision and substitute for the Act of 1870, and would probably have repealed it by implication had the repeal not been express; but it was not a revision of the Act of 1872, chapter 241, nor intended as a substitute for it. The Act of 1872, ch. 241, is therefore in force, and the acts of the appellant, Willing, were justified by his office under that Act.

The Court, therefore, erred in sustaining the demurrers to all the pleas which properly plead that defence.

But if the Act of 1874, ch. 181, repealed the Act of 1872, ch. 241, still Willing was clearly entitled *super visum,* to arrest the appellee, who was violating the Act of 1874. He was dredging in waters where dredging was forbidden by that Act. *Act of* 1874, *ch.* 181, *sections* 1, 2, 5 *and* 8.

Willing and Mezick *vs.* Bozman.

The license to dredge is confined to the waters of the Chesapeake and Eastern Bays, and does not extend to Wicomico river, where the pleas allege the violation took place. To dredge there was a violation of the Act of 1874 ; and section eight of that Act expressly requires the deputy commander in that district to arrest the person found offending. Now, that is what Willing attempted to do. The offender left his boat and escaped arrest. Was it a trespass in Willing, finding the boat left without a crew, floating without control in the waters of the river, to take her into his possession, and conduct her to a safe place ?

Non-residents, by the Act of 1874, are not allowed to take out license to dredge in Maryland waters, and boats owned in whole or in part by them are forbidden to be so used. Sections 2–11.

" Any boat, owned wholly or in part by any non-resident, used in catching oysters in this State, with scoop, dredge or similar instrument, shall be condemned by order of any Judge nearest the place of her capture * * and shall be sold by the sheriff," &c. Section 11.

Now the deputy commander had the right, under these provisions, to arrest the offender. If that offender escaped before the deputy could ascertain whether the boat was or was not owned, wholly or in part, by a non-resident, had he not clearly the right to take the abandoned boat, and deliver the same over to the authorities to await the determination of that question, and "to be disposed of according to law ?"

Under the Act of 1874, the Justice had the right to issue a warrant for the offender, and, bringing him before him, ascertain whether he was or was not the owner of the boat, and whether she was owned in whole or in part by a non-resident. Until that was done, it was manifestly impossible to tell whether the boat was forfeited or not. To hold that the deputy commander was guilty of a tres-

pass, for arresting and handing the boat over, that the fact might be ascertained whether it was liable to condemnation, would render the law nugatory in the great majority of cases where the law was being violated by boats owned by non-residents.

The officer, then, in the original capture committed no trespass, nor did he, in leaving the boat with the magistrate, who might deal with the offender and ascertain whether it was liable to be forfeited. The officer could not know the ownership of the boat until he inquired of those on board. The persons in possession fled, and left him no way of finding out that fact and fully discharging his duty under the law, except by seizing it. It was Willing's duty to seize the boat.

But if the Act of 1872, ch. 241, was unrepealed, then the appellee has forfeited "the canoe, boat or vessel, in his possession, together with all her tackle and apparel, and all things on board at the time the offence may have been committed."

By his demurrer he admits that he was violating the first section of the Act of 1872, ch. 241, if it was in force. It is by the act of violating the law that the forfeiture is worked. It requires no decree, because the party in this case admits the fact. The title to the property is divested by the commission of the offence. *Bump's Internal Revenue Law*, 100 ; *U. S. vs.* 56 *bbls.*, 4 *I. R. R.*, 106 ; *U. S. vs.* 46 *casks*, 5 *I. R. R.*, 161.

If, then, the appellee had violated the law, his title to the boat ceased *ipso facto* by such offence. He then had no title to the possession, nor rights in the boat, which could be the subject of trespass by the appellants.

The second, third, fourth and fifth pleas all show that if any trespass were committed, there were two several and distinct trespasses committed successively by Willing and Mezick. If Willing was a trespasser, it was in the capture and detention, till he delivered the boat to Mezick.

If Mezick was a trespasser, his trespass was a separate and distinct act from that of Willing. The trespasses were, therefore, several and successive, and not joint. Neither of the defendants had anything to do with the act of the other, yet the *narr.* avers a joint trespass laid on a particular day. The pleas then, were good, even upon the hypothesis that trespasses had been committed by the defendants. They could not be sued jointly for several and distinct trespasses. Under this *narr.* one of the defendants might be held for a trespass in which he was not concerned. *Waterman on Trespass, sec.* 73, *note*; *Sedley vs. Sutherland,* 3 *Esp.,* 202.

The demurrer mounts to the first error in pleading. It was, therefore, the duty of the Court to pronounce upon the *narr.* If that were bad, judgment on demurrer should have been rendered for the defendants, at least, as to such count or counts as might be faulty.

The first count of the *narr.* is bad, because it embraces, at least, two distinct causes of action.

And though after plea of not guilty, had the cause gone to the jury on that issue, without the interposition of a demurrer to the pleas, the verdict might have cured the defect, yet no such effect could be worked in the face of a demurrer, notwithstanding the demurrant is the plaintiff. In demurring to the pleas or any of them, he asserts the soundness of his *narr.* and necessarily puts that issue to the Court.

The first and second counts in the *narr.* charge a joint trespass. The third count alleges a several grievance, and does not identify which defendant committed it. It can scarcely be permissible in pleading, even under the most liberal of modern relaxations, to join a several and joint action in the same *narr.* And if it were a *general verdict would be bad.*

But in this count, it is not stated which one of the defendants committed the alleged grievance. It was bad

for uncertainty, and under the demurrer, judgment should have been rendered on that count for the defendants.

The first count in the *narr.* charges that the defendants "*maliciously* seized and took the said boats." Now by this unnecessary averment, the plaintiff made the malice the gist of the action. Any plea therefore that confessed the taking and denied the *malice* was a good plea, and ought not to have been overruled. The second, third, fourth and fifth pleas of the defendants deny the malice, and they are all pleaded to the first count of the *narr.*

After the severance on the part of the defendants as to the fourth and fifth pleas, although up to that point only the second and third pleas had been demurred to, a demurrer was entered short upon the docket by consent. This must have covered *all the pleas;* for the Court, in deciding upon it, says, "that the said pleas of the said defendants, *and each of them* above pleaded, and the matters therein contained are not sufficient in law," &c.

If the first plea were embraced in this decision, then *there was no issue left to be tried by the jury,* and there should have been an interlocutory judgment for the plaintiff for want of a plea. Such interlocutory judgment should appear by the record, and the finding a verdict and assessment of damages by the jury when there was no issue to try, and no interlocutory judgment, was error. *Griffith, et al. vs. Lynch, Garn. of Hall & Lynch,* 21 *Md.,* 578.

Was the original fourth plea withdrawn? There seems, from the record to be some doubt as to whether it was withdrawn, or still remained in the case after the amendments. If it did, the only way in which it was replied to was by the demurrer entered short by consent. If that demurrer did not cover all the pleas, and the fourth plea was not withdrawn, then the plea was not answered at all.

Willing and Mezick *vs.* Bozman.

*James U. Dennis, Robert F. Bratton* and *Henry Page* for the appellee.

The numbering of the new pleas, and the fact that they go to the whole declaration, show that they were intended by the defendants below to be in substitution of the first pleas. That upon the filing of these new pleas, the repli-cation was *withdrawn* and refiled, proves that the plaintiff treated them as withdrawn; and that the Court below permitted the case to go to trial without its being at issue, clearly demonstrates that it treated these pleas as out of the case. Now the mere filing of *additional* pleas is not to be considered a withdrawal of the first pleas. *Gardner vs. Miles,* 5 *Gill,* 98. But when the record shows that the Court and counsel on both sides, at the trial below, have acted in a way that proves that they considered they were withdrawn, are not the defendants estopped from denying it here, and ought not this Court to determine that they were withdrawn? And is not this view strengthened by the fact, that they "are pleadings which have been amended, form no part of the record, and *ought* to have been withdrawn from the case upon filing the amended pleas." *Norwood vs. State,* 45 *Md.,* 76.

What did the demurrer cover? Manifestly not the first plea; upon this the plaintiff joined issue. Any decision the Court below rendered could not have been to a general issue, plea not demurred to; the plaintiff could not demur and plead to the same count. Therefore, the words, "the said pleas of the said defendants, and each of them pleaded, and the matters therein contained, are not sufficient in law to preclude," &c., could only refer to such pleas as the Court had been called to pass upon; and the pleading in the case prevented the Court from considering the defen-dant's first plea. This Court cannot find from this record that the first plea was covered by the decision on the de-murrer, and it ought not to come to such a conclusion, unless no other construction of the terms of the record be possible.

What, then, did the demurrer cover? It was "entered short on the docket by consent;" whatever confusion exists, as to what it covered, is due to the fact that it was "entered short." Now when it was entered, the state of the pleadings was this: the *narr.*, with its several counts, the defendants' numerous pleadings, and the plaintiff's replication to a part of the defendants' pleas. That replication joined issue on the defendants' first plea, demurred as to the second and third pleas, and the fourth plea was unanswered. By agreement, a demurrer was to be entered *short*. Demurrer what to? It were unreasonable not to suppose, to *all* that remained of the defendants' pleadings, not already answered. The entire pleading of the defendants had to be answered, and the very object in putting in an additional replication, was to supply the omissions made by the original replication. It was entered *short* on the docket by consent, and we submit that this Court ought not allow this "shortness" to be urged to the prejudice of the appellee. If it had been written out formally, the demurrer would have contained words sufficiently explicit to show that it was intended to cover all the pleas. not already answered by the first replication.

In point of fact, the original pleas were withdrawn by the defendants and are, therefore, improperly in the record; and the demurrer entered short was intended to extend to the defendants' entire pleading, except his first. plea; and the Court's decision did not cover this first plea, and the case did go to trial upon the issue tendered by the defendants' first plea, and accepted by the plaintiff's first. count in the replication.

The appellants' counsel contends that Willing's powers,. as an officer, can be determined by the provisions of Act of 1870, ch. 364, and argues: 1st. That the Act of 1874, ch. 181, repealing this Act, does not seem materially to change the general powers of the Oyster Police Force. And 2nd. That the Act of 1874, does not repeal the Local Act of 1872, ch. 241.

Willing and Mezick *vs.* Bozman.

1st. Does the Act of 1874, ch. 181, repeal the Act of 1870, ch. 364, and change the general powers of the Police Force? In answer, it is submitted that it absolutely repeals the Act of 1870, and entirely abolishes the Force created by such Act, and establishes an entirely new Force, with different powers, to be called by a different name. Not a vestige of the power of the present Oyster Force can be referred to the Act of 1870, that Act being repealed in terms, everything under it is swept away. For the purpose of construing later Acts, it may be referred to as affording some light, but as a potent living Act, it is as much out of existence as if it never had been passed. Any argument, therefore, which assumes that it has had any vitality for any purpose, save the passage of the Act of 1874, is radically defective. If this be so, Willing, at the time of the acts alleged by the *narr.*, could derive no powers in the enforcement of the Act of 1872, from the Act of 1870; the very breath of his existence as an officer was derived solely from the Act of 1874. Now, if this last Act gave him no power to seize property, he had none. The Act of 1872 confers upon him no powers at all; it simply imposes the duty upon him to arrest and seize on information. The fallacy of the argument of the appellants' counsel is fully exposed by the reflection that if the Act of 1874 had repealed the Act of 1870, without other provisions, the whole force would have been annihilated, and if the Act of 1874 were repealed, now the Force could look to no other law to avoid a similar fate.

If then the law of 1874 must be looked to, and that law confers no powers upon the force to seize property can it be found elsewhere? The appellants' counsel seems to think that if Willing had the power to arrest the person, he had a right to seize the property. But it is submitted no such deduction can be drawn, either in favor of this special officer, under the laws creating him, nor under the powers incident to the duties of a policeman or other

peace officer. Nor can he be invested with extraordinary powers, because of an alleged inconvenience in ascertaining the name of the offender. Such difficulties are encountered by all persons employed in detecting and bringing to punishment offenders. If Willing was not invested *ex officio* under the law with power to seize property, for the purpose of securing the offender, no difficulty of his position can confer it upon him.

2nd. But it is said the Local Act of 1872 is not repealed by the Act of 1874. Appellants' counsel urge that the inconsistency of the Acts of 1872 and 1870, was as great as that between the Acts of 1872 and 1874. For the sake of argument, conceding this, how would the matter then stand? It is conceded by appellants' counsel that the Act of 1872 repealed the act of 1870, as far as they are repugnant to each other. Now if the Act of 1874 covers every provision of 1872, and is repugnant thereto, by the same course of reasoning, the latter Act would be repealed. It is also conceded in argument that the Act of 1874 was intended as a revision of the Act of 1870; it is claimed that the same reasoning which establishes this, clearly demonstrates that all the oyster laws relating to the Chesapeake bay, and its tributaries, were also intended to be revised to this extent; that the provisions of the Act of 1874 should be of uniform application.

Finally, if Willing had no authority to seize the vessel, Mezick had none to receive and detain. If this be so, the latter acted extra-judicially, without even a *prima facie jurisdiction*, and if this were done maliciously, as the *narr.* charges, he is liable in damages. *Morgan vs. Hughes*, 2 *T. R.*, 231; *Broget vs. Coyney*, 1 *M. & Ry.*, 215.

In *Edwards vs. Ferris*, 7 *C. & P.*, 542, PATTERSON, J., said: "It is his duty to examine into a charge, or, if there is a reason why he cannot examine into it, he is not to interfere at all." *Davis vs. Capper*, 10 *B. & C.*, 28.

In *Adkins vs. Brewer*, 3 *Cow.*, 206, it was held an action will lie against a Justice of the Peace who, acting without

jurisdiction, injures another in person or property. *Bige-low vs. Stearns,* 19 *Johnson,* (*N. Y.,*) 39; *Revell vs. Pettit,* 3 *Met.,* (*Ky.,*) 314; *Piper vs. Pearson,* 2 *Gray,* (*Mass.,*) 120; *Blood vs. Sayre,* 17 *Vt.,* 609; *Butler vs. Potter,* 17 *Johnson,* (*N. Y.,*) 145.

In this State the decisions are no less positive. In *Bre-vord vs. Hoffman,* 18 *Md.,* 484, this Court uses the follow-ing language: "Where the act in question is that of a *judicial* officer, all that the law can secure is a guarantee that they shall not with impunity do wrong wilfully, fraudulently or corruptly. If they do so act, *they are liable both civilly and criminally.*" And the decision was affirmed in *Hess vs. State,* 24 *Md.,* 562; *Day and Gorsuch vs. Day,* 4 *Md.,* 270; *Deal vs. Harris,* 8 *Md.,* 40.

In all these cases, this distinction is made, viz., where the justice has no jurisdiction and undertakes to act, his acts are *coram non judice;* but if he has jurisdiction and errs in exercising it, then the act is not void but voidable. In the first case he is liable in trespass, otherwise not, unless he acts corruptly. *Beaurain vs. Scott,* 3 *Campbell,* 388; *Ackerly vs. Parkinson,* 3 *M. & S.,* 425; *Allen vs. Gray,* 11 *Conn.,* 95; *Addison on Torts, ch.* 15, *sec.* 1; *Cooley on Torts,* 419.

No presumption can be made in favor of a justice of the peace, so far as his jurisdiction in civil matters is con-cerned. At common law, he was simply a conservator of the peace, and his powers and duties in civil matters are conferred entirely by statute. (2 *Hilliard on Torts, p.* 170, *note a.*) His (a justice's) powers being conferred by statute, his jurisdiction is limited, and if he exceeds it, he becomes a trespasser, and every tribunal of limited juris-diction acts at its peril. 2 *Hilliard on Torts,* 173; *Piper vs. Pearsons,* 2 *Gray,* 120, 410; *Knowles vs. Davis,* 2 *Allen,* 61; *State vs. Hartwell,* 35 *Maine,* 129; *Lane vs. Crosby,* 42 *Maine,* 327; *Willey vs. Strickland,* 8 *Ind.,* 453; *Clarke & Whipple vs. May & Kent,* 2 *Gray,* 410; *Plummer vs Mc-Lean,* 8 *Ind.,* 457.

o

ROBINSON, J., delivered the opinion of the Court.

The declaration in this case contains three counts.

The first charges the defendants with having *unlawfully, wickedly and maliciously* seized and taken possession of the plaintiff's boat, whereby he was greatly damaged and injured.

To this count the defendants pleaded the general issue, and then filed separate pleas by way of justification to the whole declaration.

The separate plea of the defendant, Willing, alleges that the boat mentioned in the declaration was being used for the purpose of dredging oysters in the waters of Wicomico County, and that on being pursued the person in charge of said boat escaped and the boat itself was taken by the defendant, as Deputy Commander of the State Fishery Force, and delivered to one Affra D. Mezick, justice of the peace of said county, to be disposed of according to law.

The separate plea of the defendant, Mezick, alleges that the boat was delivered to him as a justice of the peace, of Wicomico County, by the defendant, Willing, acting as Deputy Commander of the State Fishery Force, charged with violating the provisions of the Act of 1872, ch. 241; and that as justice of the peace he held the same upon said charge to await the adjudication of the questions of law, arising in connection with the condemnation of said boat.

To these pleas the plaintiff demurred, and the question is, whether the defendants, under the facts set forth in these pleas, were justified in taking the plaintiff's boat?

The Act of 1872, ch. 241, prohibits the catching of oysters in the waters of Wicomico County, with scoop, scrape, drag or dredge, and provides that the boat or boats used by persons in violating the provisions of the Act, shall be seized and taken possession of to be disposed of as therein directed.

Conceding now for the purposes of this case, that the defendant, Willing, as Deputy Commander was authorized by this Act to seize the plaintiff's boat, on the charge of being used in violating the provisions of the statute, the question then is whether the Act of 1872, ch. 241, has been repealed by the Act of 1874, ch. 181?

There is no reference either in the preamble or in the body of the Act of 1874 to the Act of 1872, and the question whether it operates as a repeal of the latter, depends upon whether the provisions of the general Act of 1874 are inconsistent with and repugnant to the provisions of the special Act of 1872. *State vs. Northern Central Railway Company,* 44 *Md.,* 131.

Now by the Act of 1874, the entire oyster law of this State was revised and remodeled. It appropriated twenty thousand dollars for the construction and equipment of six boats, divided the waters of the State into six districts, and provided that a boat should be stationed in the waters of each district, to prevent the violation of the provisions of the Act. One of these districts embraced the waters of *Dorchester* and *Wicomico Counties.* It created a Board to be styled the "State Fishery Force," and authorized said Board to appoint Commanders for each boat. It no longer permitted the seizure and condemnation of boats used in violating the law; but changed the kind and nature of the punishment and the tribunal to enforce it; and there is not a word in the Act to show it was not intended to be of uniform application everywhere except as to *Worcester County.* Then again the provisions of the Act of 1874, in regard to the time allowed for catching oysters and the persons to whom they may be sold, are inconsistent with sec. 2, of the Act of 1872.

The two Acts cannot stand together, and the general Act of 1874 must therefore be construed as repealing the special Act of 1872. The defendant had no right to take possession of the plaintiff's boat, although it was used

in violating the provisions of that Act. The facts set forth in the special plea did not therefore amount to a justification, and the Court was right in sustaining the plaintiff's demurrer.

We are of opinion also, that the special plea of the defendant Mezick is a bad plea. No rule of pleading is better settled, than that a plea in bar must answer the whole declaration. If the plea undertakes to answer the whole, but in fact answers a part only, the plea is bad, and the plaintiff may demur. *Com. Dig. Pleader, E.,* 1, 36; *Coke Littleton,* 303 *a*; 1 *Saun.*, 28, note 3; *Steph. on Plead.*, (*5th Ed.*) 246; 1 *Tyr. & Gran.*, 85; *Karthaus vs. Owings,* 2 *G. & J.*, 430; *Consolidation Coal Co. vs. Shannon,* 34 *Md.*, 144.

And it is equally well settled that every plea is to be understood as confessing such traversable matters alleged on the other side, as it does not traverse. *Bac. Abr. Pleas,* 322, 386, (*5th Ed.*); *Com. Dig. Pleader,* (*G.* 2); *Hudson vs. Jones,* 1 *Salk.*, 91; *Nicholson vs. Simpson, Fort.*, 356.

Now the declaration charges the defendants with having *unlawfully, wickedly and maliciously* taken the plaintiff's boat, &c. The defendant Mezick undertakes to justify the taking as thus alleged, by saying that the boat was delivered to him as a justice of the peace, by the defendant Willing acting as Deputy Commander, &c., charged with violating the provisions of the Act of 1872, ch. 241, and that as justice of the peace he held the same, &c. To make this a good and sufficient plea, it ought to conclude by denying that the defendant "unlawfully, wickedly and maliciously took the plaintiff's boat." These facts are alleged in the declaration, and should have been expressly and not *inferentially* or *argumentatively* denied. But it is further argued that the demurrer mounts up to the first error in pleading, and if the *narr.* was defective, the Court should have entered judgment for the defendants. It is true, the Court on demurrer will consider the whole record, and give judgment for the party, who, on the whole ap-

Willing and Mezick *vs.* Bozman.

pears entitled to it. *Com. Dig. Pleader, M,* 1 ; 5 *Coke Rep.,* 29 *a ;* 1 *Saunders,* 285 *n ; Le Bret vs. Pophillon,* 4 *East,* 502.

It is insisted that the declaration is bad because it charges the defendants with a joint and separate trespass. This, of course, the plaintiff could not do,

The first and second counts charge the defendants with a joint trespass, and the third charges " *the defendant.*" Whether this be a mere slip of the pen and " *defendant* " was written for "*defendants*," is quite immaterial, because it does not designate which of the defendants committed the trespass. As a count, therefore, charging a separate trespass it would be bad. But on a general demurrer, the defendants would not be entitled to judgment unless all the counts were defective. In this declaration the first and second counts are good counts, and conceding the third to be bad, yet the other counts were sufficient to support the action.

In any aspect, therefore, in which this case may be viewed, the judgment below must be affirmed.

*Judgment affirmed.*

(Decided 19th June, 1879.)